FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 17, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

JAMES L.,[1]

              Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

              Defendant.

No. 1:25-cv-3201-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff James L. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff contends the ALJ reversibly erred in assessing Plaintiff's reported

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

mental health symptoms and the psychological medical opinions. Because the ALJ improperly discounted Plaintiff's symptom claims, the ALJ erred. This error affected the formulation of the residual functional capacity (RFC). Accordingly, this matter is remanded for further proceedings.

## I.    Background

Plaintiff filed his Title 2 and Title 16 applications for benefits in July 2022, when he was 29 years old, alleging disability preventing him from working beginning April 20, 2022.[2] He alleged physical injuries, physical limitations on the left side of his body, chronic pain, anger issues, memory loss, anxiety, and post-traumatic stress disorder (PTSD).[3]

Plaintiff appeared for a hearing before ALJ Marc Yerkey in May 2025, at which Plaintiff and a vocational expert testified.[4]

---

[2] Administrative Record (AR) 274, 281, 288.

[3] AR 86, 101, 377, 379–81, 384

[4] AR 42–83.

DISPOSITIVE ORDER - 2

After the hearing, the ALJ issued a decision finding Plaintiff not disabled.[5] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[6] As to the medical opinions, the ALJ found:

- the administrative findings of the State agency psychological consultant persuasive; and

- the consultative opinions of Marquetta Washington, ARNP, Thomas Genthe, PhD, Dana Harmon, PhD, and Joyce Austin, PMHNP, not persuasive.[7]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through March 31, 2027.

---

[5] AR 14. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 22. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[7] AR 25–26.

DISPOSITIVE ORDER - 3

- Step one: Plaintiff had not engaged in substantial gainful activity since April 20, 2022, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder; anxiety disorder; borderline personality disorder; PTSD; and substance use disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels, except Plaintiff could understand, remember, and carry out only simple instructions; could have only occasional interactions with others; and could deal with only occasional changes in a routine work setting.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

DISPOSITIVE ORDER - 4

numbers in the national economy, such as hand packager, auto detailer, cleaner, marker, router, or collator.[8]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[9] Plaintiff now appeals to district court.[10]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[11] and such error impacted the nondisability determination.[12] Substantial evidence is

---

[8] AR 19–27.

[9] AR 1.

[10] ECF No. 1.

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[12] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 5

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]

### III.  Analysis

Plaintiff does not challenge the ALJ's findings regarding his physical health and limitations; instead, he narrows his appeal to issues regarding his mental health.[14] He argues the ALJ reversibly

---

[13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[14] *See Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) (deciding that the claimant forfeited an argument by not challenging the ALJ's findings in that regard).

DISPOSITIVE ORDER - 6

erred by not properly assessing Plaintiff's alleged mental symptoms and the psychological medical opinions. In response, the Commissioner argues the ALJ committed no error and that substantial evidence supports the ALJ's reasons for discounting Plaintiff's alleged symptoms, weighing of the medical opinions, and nondisability decision. As is explained below, the ALJ consequentially erred when evaluating Plaintiff's reports of the symptoms caused by his mental disorders, thereby impacting the RFC.

**A.    Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by not properly assessing Plaintiff's alleged symptoms, asserting that six of the ALJ's relevant findings were either not supported by the record or not sufficiently clear and convincing reasons to discount his reported symptoms: (1) that Plaintiff had conservative mental treatment; (2) that Plaintiff's mental symptoms were generally well controlled; (3) that objective findings were unremarkable; (4) that Plaintiff attended only three therapy sessions; (5) that Plaintiff had a relatively normal degree of functioning; and (6) that Plaintiff had stated he was willing to work.

### 1.    Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[15] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence; 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[16]

---

[15] 20 C.F.R. §§ 404.1529(c), 416.929(c).

[16] *Id.* §§ 404.1529(c), 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2025).

DISPOSITIVE ORDER - 8

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[17] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[18]

### 2. Plaintiff's Alleged Symptoms

The record contains several sources of Plaintiff's alleged symptoms, which the Court will present chronologically along with the circumstances in which Plaintiff's complaints were made for context.

In June 2022, Plaintiff established care with a primary care physician, Ahmed Nahas, MD, and complained of feeling "anxious all

---

[17] *Smartt*, 53 F.4th at 499; 20 C.F.R. §§ 404.1529(c), 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[18] *Smartt*, 53 F.4th at 499 (alteration added).

DISPOSITIVE ORDER - 9

the time" after being "jumped" three years prior.[19] Plaintiff reported he was "hiding between friends places."[20] He explained to Dr. Nahas that he was physically abused and starved as a child.[21]

In August 2022, Plaintiff had a telephone interview for purposes of filing his disability benefits claim.[22] According to the interviewer, Plaintiff "was extremely flustered," the interviewer "spent a lot of time consoling and attempting to calm" Plaintiff, and, when told he needed information, Plaintiff said he had memory issues.[23]

In October 2022, Plaintiff reported to Dr. Nahas that the medication Dr. Nahas prescribed "made him angrier" and at that point he "just want[ed] to lay down on the floor and not do anything."[24]

---

[19] AR 514.

[20] *Id.*

[21] AR 517.

[22] AR 308–10.

[23] AR 309.

[24] AR 526.

DISPOSITIVE ORDER - 10

In February 2023, according to a crisis intervention report, Plaintiff said he would hurt others if they hurt him and had an altercation with his neighbors for which law enforcement was called.[25] The provider stated Plaintiff appeared to be in a manic episode, "ranting about Christians/slavery."[26]

On February 28, 2023, Plaintiff alleged to Dr. Genthe, as part of a psychological/psychiatric evaluation, that he was always in pain "because of you stupid people."[27] He said he wished he was dead.[28] He said he felt unusually restless and had difficulty concentrating out of "fear that something awful may happen."[29] He said he had no "full choice in this life, having you Christians abuse me and dealing with you dumb ass humans."[30] He alleged his past traumas of being abused

---

[25] AR 562.

[26] *Id.*

[27] AR 429.

[28] AR 431.

[29] *Id.*

[30] *Id.*

DISPOSITIVE ORDER - 11

as a child and getting beaten made him "pissed," "ruin[ed] [his] sanity," and gave him troubled memories, distressing dreams, and flashbacks.[31] He reported feeling jumpy, easily startled, "super alert" or on guard, and detached from others.[32] He acknowledged having anger outbursts.[33]

In April 2023, as part of a counseling intake, he reported not liking to be around people, losing interest in doing things, feeling angry and irritable, having trouble sleeping, avoiding people, having troubled memories, feeling like his life was in danger, and having problems concentrating, all of which related to being attacked by three men a few years prior.[34]

Over the next few months, Plaintiff complained to Dr. Nahas and a therapist of increased stress, becoming homeless after having a conflict with the people he was living with, getting kicked out of a

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] AR 572.

DISPOSITIVE ORDER - 12

homeless shelter for having issues with other people, and having conflicts with and feeling unsafe around others.[35]

On May 20, 2024, Plaintiff completed an Adult Function Report as part of his disability benefits application.[36] There, Plaintiff reported he does not go to social events, does not go out alone, was worried all the time, stayed inside as much as possible, had fear of being jumped, had a "very big issue with day to day life" because of PTSD, needed to find the right mental health counselor because of fear from the prior assault, and had limited ability to think clearly.[37]

On May 29, 2024, as part of a psychiatric evaluation, Plaintiff alleged to PMHNP Austin that people triggered him, he would be better off dead, he was tired of this world, and "[p]eople treat me like shit, what I say does not matter."[38]

---

[35] AR 542, 546, 574, 579.

[36] AR 377–85.

[37] AR 378, 380–84.

[38] AR 630.

DISPOSITIVE ORDER - 13

Throughout the rest of 2024 and in early 2025, Plaintiff continued reporting to Dr. Nahas that he had problems with all other people, always wanted to be alone, had panic attacks stemming from the past assault, and was easily frustrated and agitated.[39] Consistent with these symptoms during this time, a therapist reported Plaintiff "was verbally abusive and aggressive, cussing at me and all people and staff."[40]

On May 6, 2025, Plaintiff appeared with his representative via telephone for a hearing before the ALJ and testified to the following regarding his mental health.[41] He was living "[f]loor to floor" or "[c]ouch to couch" and stayed at a homeless shelter for "a while."[42] He was taking fluoxetine for anxiety and depression, and had done so for a year and a half.[43] His anxiety made him so worked up that he felt like

---

[39] AR 716, 721, 724, 726, 728–29.

[40] AR 40.

[41] AR 42–83.

[42] AR 56.

[43] AR 56, 58.

DISPOSITIVE ORDER - 14

he could "explode at any moment from the inside out," he would shake, and he would become more anxious.[44] People standing too close to him, people being aggressive, and "[m]emories about what happened" made him anxious.[45] His depression made him feel like he would be better off dead.[46] His medication made his symptoms occur less often and less severely.[47] He struggled with concentration, memory, and attention because he would shut down and think about survival when stressed.[48]

Plaintiff further testified he felt uncomfortable around other people and did not trust others because he had been abused and neglected.[49] He usually tries to avoid other people, but when he does interact with others, he constantly worries, sometimes says the wrong

---

[44] AR 57.

[45] *Id.*

[46] *Id.*

[47] AR 57–58.

[48] AR 58–59.

[49] AR 59.

DISPOSITIVE ORDER - 15

things, and feels like jumping off a cliff.[50] At his last job, "it got really bad" with co-workers and supervisors because he was "really mean."[51]

Plaintiff testified he never had a psychiatric hospitalization.[52] He saw a mental health therapist three times in 2025 and approximately eight times in 2024.[53]

### 3. ALJ's Reasons and Analysis

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the medical evidence and other evidence in the record.[54] The ALJ found the overall medical evidence indicated Plaintiff's mental symptoms were "generally well-controlled with conservative medication management," based on

---

[50] AR 59–60.

[51] AR 61.

[52] AR 73.

[53] AR 74.

[54] AR 22.

DISPOSITIVE ORDER - 16

progress notes from Dr. Nahas reporting improvements with medication in his mood, depression, anxiety, conversion disorder, and borderline personality disorder from October 2022 through March 2025.[55] The ALJ also discounted the severity of Plaintiff's reported symptoms because he attended only three therapy sessions and was discharged for not identifying treatment goals, and Plaintiff had no psychiatric hospitalizations.[56]

The ALJ explained the RFC accounted for Plaintiff's alleged mental symptoms that were supported by the record, offering three reasons why "the objective findings were often unremarkable and do not support greater functional restrictions."[57] First, the ALJ stated, "Mental status examinations revealed many normal findings, suggesting intact cognitive and mental functioning overall," citing two emergency room records and PMHNP Austin's examination.[58] Second,

---

[55] AR 24.

[56] *Id.*

[57] *Id.*

[58] *Id.*

the ALJ found that Plaintiff "retained a relatively normal degree of functioning" because he could maintain personal care, perform household chores, prepare meals, shop for groceries, play video games, and attend church.[59] Third, the ALJ stated Plaintiff reported he was willing to work in September 2023.[60]

The ALJ concluded his assessment of Plaintiff's symptoms as follows:

> Based on the overall evidence, the undersigned finds support for the above residual functional capacity, which allows for work at all exertional levels with nonexertional limitations. As an accommodation for the claimant's ongoing mental symptoms and moderate mental functioning limitations, he can understand, remember, and carry out simple instructions. He can have occasional interactions with supervisors, coworkers, and the public. He can deal with occasional changes in a routine work setting.[61]

Here, the ALJ did not misstate the record, but he overall cherry-picked some normal findings that were irrelevant to Plaintiff's allegations of social-functioning symptoms, disregarded the overall

---

[59] *Id.*

[60] *Id.*

[61] AR 25.

DISPOSITIVE ORDER - 18

diagnostic record, and relied on some findings not supported by substantial evidence.

First, while *some* symptoms might have been "generally well-controlled with conservative medication management," substantial evidence does not support that the symptoms undercutting the ALJ's RFC finding the most—such as Plaintiff's frequent agitation, outbursts, and difficulties interacting with others—were well-controlled. Symptom improvement must be weighed within the context of an "overall diagnostic picture," particularly for mental symptoms, which often wax and wane.[62] Reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of h[is] symptoms," as well as with an awareness that "improved functioning while being treated and while limiting

---

[62] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also* 20 C.F.R. §§ 416.920a(c)(1) §§ 416.929(c)(3); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

DISPOSITIVE ORDER - 19

environmental stressors does not always mean that a claimant can function effectively in a workplace."[63]

The overall diagnostic picture of Plaintiff, as reported in the same records from which the ALJ highlighted a few reports of a stable and calm mood in a clinical environment, was that Plaintiff's ability to interact with others did not materially improve with medication.[64] Plaintiff continued getting into conflicts with others and having angry outbursts while he was medicated.[65] This evidence was more relevant to Plaintiff's ability to interact with others in the workplace than a few isolated instances of presenting with a stable mood in the clinical setting, yet the ALJ did not address it. As such, the ALJ erroneously

---

[63] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[64] *See, e.g.*, AR 431–33, 526, 528, 535, 542, 546, 574, 579, 625–27.

[65] AR 40, 528, 572, 678, 689, 700–01, 709, 716, 721.

DISPOSITIVE ORDER - 20

did not explain why the objective medical findings were inconsistent with Plaintiff's complaints and erroneously discounted the basis for Plaintiff's limitations because of nonrelevant normal findings.[66]

Second, the ALJ's reliance on Plaintiff's therapy sessions is unconvincing. The record shows Plaintiff complained at his therapy sessions of PTSD symptoms that caused him to have several conflicts with others and wanted help learning to deal with people.[67] At the

---

[66] *See Smartt*, 53 F.4th at 498; *Ghanim*, 763 F.3d at 1164 (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

[67] AR 690–96. For this analysis, the Court relies on the three detailed records of therapy sessions described by the ALJ as the "only" therapy sessions Plaintiff attended. *See* AR 24; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ asserts). The Court acknowledges, however, the

DISPOSITIVE ORDER - 21

third therapy session, he was discharged because he said he did not need counseling because he was "better than everyone" and "too smart" and "too good" for counseling.[68] Therefore, contrary to the ALJ's finding, the therapy records are consistent with Plaintiff's symptoms.

Third, substantial evidence does not support discounting Plaintiff's allegations based on PMNHP's Austin's mental status examination and the two emergency room records revealing "many normal findings[] suggesting intact cognitive and mental functioning overall."[69] The ALJ cherry-picked the "normal" findings in PMNHP Austin's mental status examination without considering the complete diagnostic picture and without considering the more relevant findings in the same examination.[70] In the same examination, PMNHP Austin

evidence of Plaintiff engaging or attempting to engage in additional therapy. *See* AR 40, 535, 678, 709, 719, 733.

[68] AR 700.

[69] AR 24.

[70] *See Ghanim*, 763 F.3d at 1164 (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v.*

DISPOSITIVE ORDER - 22

reported that Plaintiff expressed severe difficulties in getting along with other people because of his depression and anxiety, which was consistent with the overall record.[71]

The emergency room records are plainly not substantial evidence. In both, Plaintiff visited the emergency room for nausea and vomiting, and there is a single note that his psychiatric mood and affect was normal.[72] In relying on these records to discount Plaintiff's allegations, the ALJ gave undue weight to the normal mental-health findings during brief physical-ailment appointments.[73]

---

*Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[71] AR 625–26.

[72] AR 416, 448.

[73] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental health findings against findings from *other mental health* professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone

DISPOSITIVE ORDER - 23

Fourth, substantial evidence does not support discrediting Plaintiff's allegations based on his daily activities. The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities," such as grocery shopping or driving a car, "does not in any way detract from h[is] credibility as to h[is] overall disability."[74] Also, the Ninth Circuit has recognized that the fact the

who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports. However, the purpose of those visits was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

[74] *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (Ms. Vertigan could grocery shop without assistance, walk approximately an hour in the malls, play cards, swim, watch television, and read, but these activities did not consume a substantial part of her day and so did not detract from her credibility).

DISPOSITIVE ORDER - 24

claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that []he encountered in h[is] daily life during the relevant period."[75] None of Plaintiff's daily activities cited by the ALJ contradict his reports of severe social-functioning limitations and have, at best, only dubious relevance to interpersonal functioning in the workplace.[76]

Finally, Plaintiff's statement in September 2023 that he was "willing to work" is not substantial evidence. Plaintiff said this as part of developing a treatment plan for therapy, identifying "willing to work" as a personal strength.[77] This statement is wholly unremarkable and irrelevant to his symptom reports.

4.    Conclusion

The ALJ's reasons for discounting Plaintiff's reported symptoms from his PTSD, depression, anxiety, and other mental disorders are not supported by substantial evidence and are unconvincing. These

---

[75] *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

[76] *See* AR 24.

[77] AR 692.

DISPOSITIVE ORDER - 25

symptom evaluation errors are consequential because the ALJ formulated the RFC's mental functioning limitations based on his evaluation of Plaintiff's symptoms. Crucially, the ALJ concluded based on his evaluation that Plaintiff could have occasional interactions with others at work. Remand for a new evaluation of Plaintiff's reported symptoms is required.

On remand, the ALJ is to reevaluate Plaintiff's reported symptoms. The ALJ is to specifically evaluate Plaintiff's alleged social-functioning symptoms that are relevant to interpersonal capabilities in the workplace. If the ALJ discounts these symptom reports, the ALJ must be specific about which symptoms are being rejected and cite to specific evidence relevant to Plaintiff's ability to interact with others to explain why each symptom is being rejected. The ALJ's reasons for rejecting the symptom reports must be clear and convincing.

**B.    Other Steps: The ALJ must reevaluate on remand.**

The ALJ's errors when evaluating Plaintiff's reported symptoms impacted the ALJ's sequential analysis.[78] A new disability evaluation

---

[78] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018).

DISPOSITIVE ORDER - 26

by the ALJ is needed. Therefore, the Court does not analyze Plaintiff's remaining claims regarding the ALJ's assessment of the medical opinions.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 11**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DISPOSITIVE ORDER - 27

DATED this 17th day of April 2026.

_____

EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 28